******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# BANK OF NEW YORK MELLON, SUCCESSOR TRUSTEE *v.* WADE H. HORSEY II ET AL.
## (AC 46167)

Elgo, Clark and Lavine, Js.

*Syllabus*

Pursuant to the rule of practice (§ 61-11 (g)), "[i]n any action for foreclosure in which the owner of equity has filed, and the court has denied, at least two prior motions to open or other similar motion, no automatic stay shall arise upon the court's denial of any subsequent contested motion by that party, unless the party certifies under oath, in an affidavit accompanying the motion, that the motion was filed for good cause arising after the court's ruling on the party's most recent motion. . . ."

The substitute plaintiff sought to foreclose a mortgage on certain real property owned by the defendants W and J. The trial court rendered a judgment of strict foreclosure, which W appealed to this court. This court affirmed the judgment and remanded the case for the purpose of setting new law days. W then filed his first motion to open and vacate the judgment of strict foreclosure, which the trial court denied. J appealed to this court, which affirmed the judgment and remanded the case for the purpose of setting new law days. The trial court denied W's second motion, captioned "Motion for Judgment of Dismissal for Lack of Standing and Lack of Subject Matter Jurisdiction," and W appealed to this court, which dismissed the appeal. The trial court denied W's third motion, captioned "Motion for Void Judgment," and reset the law days. W and J then filed a motion to set aside the judgment resetting the law days. On the date the law days were set to commence, W and J filed the present appeal from the trial court's inaction on their motion to set aside the judgment. The next day, the trial court denied that motion, and W and J filed an amended appeal from that decision. *Held* that this court could not grant W and J any practical relief, and, accordingly, the appeal was dismissed as moot: W's first, second and third motions constituted "at least two prior motions to open or other similar motion" under the plain meaning of Practice Book § 61-11 (g) and, accordingly, because no automatic stay arose on the trial court's denial of the motion to set aside the judgment and the filing of the appeal therefrom, the law days had passed, and title to the property had vested absolutely in the substitute plaintiff; moreover, the motion to set aside the judgment did not have an accompanying affidavit, as required by § 61-11 (g), that set forth that the motion was filed for good cause that arose after the trial court's ruling on W's third motion.

Argued February 15—officially released July 30, 2024

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Hartford, where The Bank of New York Mellon, successor trustee, was substituted as the plaintiff; thereafter, the court, *Dubay, J.*, granted the substitute plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant appealed to this court, *Prescott, Elgo* and *Bright, Js.*, which affirmed the judgment of the trial court and remanded the case for the purpose of setting new law days; subsequently, the court, *Dubay, J.*, denied the named defendant's motion to open the judgment, and the defendant Jacquelyn Costa Horsey appealed to this court, *Prescott, Elgo* and *Suarez, Js.*, which affirmed the judgment of the trial court and remanded the case for the purpose of setting new law days; thereafter, the court, *Budzik, J.*, denied the named defendant's motion for a judgment, and the named defendant appealed to this court, which dismissed the appeal; subsequently, the court, *Baio, J.*, denied the named defendant's motion for a void judgment and reset the law days; thereafter, the named defendant et al. appealed to this court from the trial court's inaction on their motion to set aside the judgment of the trial court resetting the law days; subsequently, the court, *Baio, J.*, denied the motion to set aside the judgment filed by the named defendant et al., and the named defendant et al. filed an amended appeal. *Appeal dismissed.*

*Thomas P. Willcutts*, for the appellants (defendants).

*Geoffrey K. Milne*, for the appellee (substitute plaintiff).

*Opinion*

LAVINE, J. In this protracted foreclosure matter, the defendants Wade H. Horsey II and Jacquelyn Costa

Horsey[1] appeal from the judgment of the trial court denying their motion to set aside the court's judgment of strict foreclosure rendered in favor of the substitute plaintiff, The Bank of New York Mellon, as Successor Trustee for JPMorgan Chase Bank, N.A., as Trustee for Novastar Mortgage Funding Trust, Series 2005-2 Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-2. The dispositive issue in this appeal is whether the defendants filed "at least two prior motions to open or other similar motion" pursuant to Practice Book § 61-11 (g),[2] such that an automatic appellate stay did not apply to toll the running of the law days. We conclude that no automatic stay was triggered by operation of § 61-11 (g), and, thus, the law days have passed, divesting the defendants of their interest in the property, and title to the property has vested in the substitute plaintiff. Accordingly, this court can provide the defendants no practical relief, and we dismiss this appeal as moot.

In order to place this matter in proper context, a detailed recitation of its procedural history must be provided. The following facts and procedural history, as set forth in this court's decision in *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 190 A.3d 105, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018), or as otherwise undisputed, are relevant to our disposition

---

[1] Sovereign Bank also was named as a defendant in the foreclosure action but has not appealed from the judgment of foreclosure or participated in the present appeal. Because only Wade Horsey and Jacquelyn Horsey have participated in this appeal, all references herein to the defendants are to the Horseys collectively, and we refer to them individually by first name when appropriate.

[2] Practice Book § 61-11 (g) provides in relevant part: "In any action for foreclosure in which the owner of the equity has filed, and the court has denied, at least two prior motions to open or other similar motion, no automatic stay shall arise upon the court's denial of any subsequent contested motion by that party, unless the party certifies under oath, in an affidavit accompanying the motion, that the motion was filed for good cause arising after the court's ruling on the party's most recent motion. . . ."

of the present appeal. "The original plaintiff, The Bank of New York Mellon, as Successor Trustee under Novastar Mortgage Funding Trust 2005-2, commenced this action in September, 2009 . . . [seeking] to foreclose on a mortgage that the defendant[s] had executed in 2005 on property in Avon as security for a note in the principal amount of $390,000.[3] The original plaintiff alleged that it was the holder of the note and mortgage and that the note was in default for nonpayment. . . .

"Foreclosure mediation began and continued through the end of 2010. Over the following year and a half, the parties filed a number of motions related to discovery. On September 26, 2012, the original plaintiff assigned the mortgage to the substitute plaintiff, which the court substituted into the action for the original plaintiff on November 19, 2012." (Citation omitted; footnote in original.) Id., 421–22.

After the defendants filed their answer on October 9, 2013, "[n]o further activity in the action occurred until April 17, 2015, at which time the defendant[s] filed a motion pursuant to Practice Book § 14-3 asking the court to render a judgment of dismissal on the ground that the substitute plaintiff had failed to prosecute the action with reasonable diligence. The court, *Vacchelli, J.*, issued an order on May 6, 2015, denying the defendant[s'] motion, but directing the substitute plaintiff to move for summary judgment or to take some other action to advance the case within sixty days. The court

[3] "The note originally was executed by the defendant[s] in favor of Novastar Mortgage, Inc. (Novastar), and the mortgage securing the note was executed in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Novastar and its successors and assigns. In October, 2008, MERS assigned the mortgage to the original plaintiff. The note was endorsed from Novastar to JPMorgan Chase Bank, N.A., the original trustee of the Novastar Mortgage Funding Trust 2005-2, and then from JPMorgan Chase Bank, N.A., to the substitute plaintiff as the successor trustee." *Bank of New York Mellon* v. *Horsey*, supra, 182 Conn. App. 421 n.2.

indicated that, if the substitute plaintiff failed to comply, the court would entertain a renewed motion to dismiss.

"The substitute plaintiff filed a motion for summary judgment as to liability only on December 21, 2015. Along with its motion, the substitute plaintiff submitted copies of the note, the mortgage and assignments, and an affidavit averring, inter alia, that the substitute plaintiff was the holder of the note and the mortgagee of record . . . . [Wade] filed an objection to the motion for summary judgment on February 29, 2016. He did not attach an affidavit or any other evidence that disputed factually the summary judgment submissions of the substitute plaintiff. . . .

"The court, *Robaina*, *J.*, heard argument on the motion for summary judgment on March 21, 2016. On April 14, 2016, the court issued orders, without comment . . . overruling [Wade's] objection to the motion for summary judgment. The court also issued the following order granting the motion for summary judgment as to liability only: '[I]t is hereby found that no genuine issue of material fact exists as to the defendants' liability on the note and mortgage. . . . Determination of the amount of indebtedness is deferred until such time as [the substitute] plaintiff seeks a judgment of foreclosure.'

"On April 19, 2016, [Wade] filed an appeal from the court's April 14, 2016 orders granting the motion for summary judgment as to liability and denying his motion for a disciplinary dismissal of the action. The substitute plaintiff filed with this court a motion to dismiss that appeal for lack of a final judgment. The motion was granted on May 25, 2016. . . . On July 20, 2016, the substitute plaintiff reclaimed for the short calendar list its April 23, 2010 motion seeking a judgment of strict foreclosure.

"On August 1, 2016, the parties appeared before the court, *Noble, J.*, on the court's dormancy docket. The court had issued a notice to appear and show cause on March 18, 2016, prior to the hearing on the motion for summary judgment, directing the parties to appear to address the status of the case and indicating that 'the court may dismiss this action at the hearing.' The court first heard from counsel for the substitute plaintiff, who indicated that the substitute plaintiff was ready to proceed to judgment but was awaiting the return of the original note and other documents necessary to secure the judgment," as those documents were in the possession of a law firm that the substitute plaintiff had previously hired to represent it in this action. (Citations omitted; footnotes omitted.) Id., 422–25. Wade then "brought to the court's attention that he previously had filed a motion to dismiss for lack of diligence and that the substitute plaintiff had failed to comply with the court's order directing the substitute plaintiff to take some action to advance the case within sixty days. . . . [A]fter confirming that the case had been on the docket since 2009, the court . . . dismissed the action." Id., 425.

The substitute plaintiff filed a motion to open and set aside the judgment of dismissal, arguing that "it had filed and reclaimed a motion for a judgment of strict foreclosure prior to the court's dismissal . . . ." Id. The court granted the motion to open, then considered the motion for a judgment of strict foreclosure. Id., 426. After determining the fair market value of the property and the amount of debt owed, the court rendered a judgment of strict foreclosure and set law days to commence on November 28, 2016. Id., 428.

Wade then appealed to this court, claiming, among other things, that the substitute plaintiff lacked standing to prosecute this action. Id., 440. This court rejected that claim and concluded, on the basis of the record

presented, "that [Wade] failed to rebut the presumption that the substitute plaintiff ha[d] standing to prosecute this action as the holder of the note and mortgage." Id. Accordingly, this court affirmed the judgment of the trial court and remanded the case for the purpose of setting new law days. Id., 445.

On December 20, 2018, the substitute plaintiff filed a motion in the trial court to reset the law days in accordance with this court's remand order. On February 22, 2019, before the court ruled on the motion to reset the law days, Wade filed a motion to open and vacate the judgment of strict foreclosure. In his motion, Wade claimed that the original plaintiff lacked standing at the inception of the case to pursue the foreclosure action. Wade further argued that, when he raised the issue of standing in his objection to the substitute plaintiff's motion for summary judgment, the court should have held an evidentiary hearing to determine whether the original plaintiff was the holder of the note at the time the action was commenced or whether the mortgage loan servicer was otherwise entitled to enforce the note.

On March 26, 2019, the court, *Sheridan, J.*, denied Wade's motion to open the judgment because it was "untimely and fail[ed] to demonstrate good cause to open the judgment of strict foreclosure entered on September 12, 2016, which judgment was affirmed by [the] Appellate Court on appeal." Wade filed a motion to reargue and reconsider the denial of the motion to open, which the court, *Dubay, J.*, denied. The court then reset the law days to commence on May 28, 2019.

On May 10, 2019, Jacquelyn appealed to this court from the judgment of strict foreclosure and the trial court's denial of Wade's February 22, 2019 motion to open. In a per curiam decision, this court affirmed the judgment of the trial court and remanded the case for

the purpose of setting new law days. *Bank of New York Mellon* v. *Horsey*, 210 Conn. App. 904, 267 A.3d 994, cert. denied, 343 Conn. 909, 273 A.3d 696 (2022).

On June 3, 2022, the substitute plaintiff filed a motion in the trial court to reset the law days in accordance with this court's remand order. That same day, Wade filed a motion captioned "Motion for Judgment of Dismissal for Lack of Standing and Lack of Subject Matter Jurisdiction." In that motion, Wade again argued that the original plaintiff lacked standing at the time the foreclosure action was commenced because it was not the owner of the note or mortgage when the action was initiated. Wade argued that any affidavits attesting otherwise were "fraudulent and forgeries attempting to mislead the Superior Court," and that "[t]he jurisdictional defect resulting from the [original] plaintiff's lack of standing cannot be cured by amending the complaint to add a party having standing." On this basis, Wade requested that the court dismiss the case with prejudice.

The court, *Budzik, J.*, denied Wade's motion for judgment on July 11, 2022, "[f]or the reasons stated in the [substitute] plaintiff's objection to the underlying motion"[4] and "because the issues raised by [Wade] in his motion as to standing and fraud have already been decided by the Appellate Court. See *Bank of New York Mellon* v. *Horsey*, [supra, 182 Conn. App. 444–45]."

On July 18, 2022, Wade appealed to this court. This court dismissed the appeal as untimely as to the September 12, 2016 judgment and for lack of a final judgment as to the July 11, 2022 order.[5]

---

[4] In the memorandum accompanying its objection to Wade's motion, the substitute plaintiff explained how it had standing and raised arguments about the law of the case doctrine, as Wade had already raised multiple, nearly identical prior challenges to subject matter jurisdiction that were resolved by the court in favor of the substitute plaintiff.

[5] The trial court had not yet ruled on the substitute plaintiff's June 3, 2022 motion to reset the law days in accordance with this court's remand order in *Bank of New York Mellon* v. *Horsey*, supra, 210 Conn. App. 904, and, therefore, no law days were scheduled at the time of the appeal from the

On November 4, 2022, Wade filed a motion captioned "Motion for Void Judgment." In the motion, Wade again raised a claim of fraud and a claim of lack of standing, arguing, inter alia, that Novastar Mortgage, Inc., continued to own the note and there was no evidence presented about the circumstances of the alleged transfer of the note to the original plaintiff. On this basis, Wade requested that the court "render any decisions in this case to be consider[ed] void and the case be dismissed."

On November 14, 2022, while that motion was still pending, the trial court, *Baio, J.*, reset the law days to commence on January 10, 2023. The court then denied Wade's "Motion for Void Judgment" on November 21, 2022, explaining that "[t]his motion comes well after the judgment was entered in this matter, the judgment affirmed by the Appellate Court and remanded for the sole purpose of resetting the law day . . . and subsequent appeal dismissed by order dated [September 28, 2022] . . . . That new law day was set in accordance with the Appellate Court remand following the denial of the petition for [certification] and by direction upon the remand."

On December 28, 2022, the defendants filed a motion to set aside the November 14, 2022 judgment of the court resetting the law days. The defendants argued that the judgment should be set aside on the basis of our Supreme Court's decision in *Bank of New York Mellon* v. *Tope*, 345 Conn. 662, 286 A.3d 891 (2022), which had been released one week earlier and addressed the issue of establishing standing in a foreclosure action.[6] The defendants, who previously were self-represented, were represented by Thomas P. Willcutts,

July 11, 2022 order. See *Connecticut National Bank* v. *L & R Realty*, 40 Conn. App. 492, 493, 671 A.2d 1315 (1996) (setting of law days is necessary for final judgment in strict foreclosure action).

[6] Specifically, in *Tope*, our Supreme Court explained that, "to establish standing to foreclose on the defendant's property, the plaintiff needed to prove that it was the holder of the note or one who was otherwise entitled to enforce the note." *Bank of New York Mellon* v. *Tope*, supra, 345 Conn.

the attorney for the prevailing party in *Tope*, for the filing of this motion.[7] Significantly, the motion was not accompanied by an affidavit in which the defendants certified under oath that the motion was filed for good cause arising after the court's ruling on Wade's most recent motion, pursuant to Practice Book § 61-11 (g).

On January 10, 2023, the date that the law days were set to commence, the defendants filed the present appeal from "[t]he court's inaction" on their December 28, 2022 motion to set aside the judgment. The following day, the court, *Baio, J.*, denied the defendants' motion to set aside the judgment, and the defendants filed an amended appeal from that decision.

On January 5, 2024, this court ordered both parties to submit supplemental briefs "addressing (1) whether, in light of [Wade's] filing of 'at least two motions to open or other similar motion' on February 22, 2019, June 3, 2022, and November 4, 2022, which all were denied by the trial court prior to the filing of the December 28, 2022 motion to set aside that is the subject of this appeal, an automatic appellate stay remained in effect pursuant to Practice Book § 61-11 (g) when the law days were scheduled to commence on January 10,

679–80. The court also explained that "being in possession of the note does not make one a 'holder' of a note when the note has a special endorsement to a different party," and, therefore, if the plaintiff is not the holder of the note, "the plaintiff can enforce the note only if it can demonstrate that it is a nonholder in possession of the note with the rights of a holder. . . . To do so, the plaintiff must prove that the transferor delivered the note to the plaintiff intending to vest in it the right to enforce the instrument." (Citation omitted.) Id., 681. Our Supreme Court concluded that, because the question of the plaintiff's standing in that case "turn[ed] on questions of fact, namely, whether the plaintiff has been vested with the right to enforce the note, the trial court should not have denied the motion to open but should have conducted an evidentiary hearing to determine whether the plaintiff had standing to bring the foreclosure action in the present case." Id., 682–83.

[7] The defendants continue to be represented by Attorney Willcutts on appeal to this court.

2023, and (2) if no appellate stay was in effect at that time, why the present appeal should not be dismissed as moot in light of *Citigroup Global Markets Realty Corp.* v. *Christiansen*, 163 Conn. App. 635, 137 A.3d 76 (2016), and *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 565 A.2d 252, [cert. denied, 213 Conn. 809, 568 A.2d 792] (1989).''

In its supplemental brief, the substitute plaintiff argues that the present appeal should be dismissed as moot because, pursuant to Practice Book § 61-11 (g), an automatic appellate stay was not in effect to prevent the law days from passing, and, accordingly, title had vested irrevocably in the substitute plaintiff. In the defendants' supplemental brief, they argue that the appeal is not moot. Specifically, the defendants argue that ''none of the . . . cited motions satisfy the criteria and stated purpose of a § 61-11 (g) motion,'' and, therefore, an automatic appellate stay was in effect to prevent the law days from passing. We conclude that the present appeal is moot, and, accordingly, we dismiss the appeal for lack of subject matter jurisdiction.

''Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable . . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy [is] capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the court] cannot grant the appellant any practical relief through its disposition of the merits . . . . Because

mootness implicates this court's subject matter jurisdiction, it raises a question of law over which we exercise plenary review. . . .

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . *An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal.* . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Emphasis in original; internal quotation marks omitted.) *Speer* v. *Norwich*, 216 Conn. App. 883, 887–88, 287 A.3d 612 (2022), cert. denied, 346 Conn. 914, 290 A.3d 375 (2023).

This court "ha[s] routinely dismissed appeals by defendants in foreclosure actions as being moot once title to the property had vested in the plaintiff. The dispositive question in those contexts is whether the law days have run so as to extinguish the defendant's equity of redemption and vest title absolutely in the plaintiff. . . . If the law days have run, no practical relief [could] follow from a determination of the merits of [the] case . . . ." (Citation omitted; internal quotation marks omitted.) *DXR Finance Parent, LLC* v. *Theraplant, LLC*, 223 Conn. App. 362, 372, 309 A.3d 347, cert. denied, 348 Conn. 957, 310 A.3d 380 (2024); see also *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 375, 260 A.3d 1187 (2021) ("[i]n Connecticut, the passage of the law days in an action for strict foreclosure extinguishes a mortgagor's equitable right of

redemption and vests absolute title in the encumbrancer"). Accordingly, except in limited circumstances,[8] "it is not within the power of appellate courts to resuscitate the mortgagor's right of redemption or otherwise to disturb the absolute title of the redeeming encumbrancer." *Barclays Bank of New York* v. *Ivler*, supra, 20 Conn. App. 166–67; see also *Connecticut National Mortgage Co.* v. *Knudsen*, 323 Conn. 684, 687 n.5, 150 A.3d 675 (2016) ("an appeal from a judgment of strict foreclosure is moot when the law days pass, the rights of redemption are cut off, and title becomes unconditional in the plaintiff" (internal quotation marks omitted)); *DXR Finance Parent, LLC* v. *Theraplant, LLC*, supra, 372 ("once title has vested absolutely in the mortgagee, the mortgagor's interest in the property is extinguished and cannot be revived by a reviewing court" (internal quotation marks omitted)).

An automatic appellate stay may operate to toll the running of the law days. See Practice Book § 61-11 (a). Section 61-11 (g) addresses the issue of how many times a defendant in a strict foreclosure action is entitled to an automatic stay while appealing denials of motions to open or other similar motions. *Deutsche Bank National Trust Co.* v. *Fraboni*, 182 Conn. App. 811, 828, 191 A.3d 247 (2018). Titled "Strict foreclosure—motion rendering ineffective a judgment of strict foreclosure," § 61-11 (g) provides in relevant part: "In any action for foreclosure in which the owner of the equity has filed, and the court has denied, at least two prior motions to open

---

[8] "[O]ur Supreme Court and this court have recognized that [courts possess] inherent powers to provide limited forms of continuing equitable relief after the passage of law days in 'rare and exceptional' cases . . . ." *U.S. Bank National Assn.* v. *Booker*, 220 Conn. App. 783, 799, 299 A.3d 1215, cert. denied, 348 Conn. 927, 304 A.3d 860 (2023). "The category of claims that fall within this class of cases sound in [f]raud, accident, mistake, and surprise . . . . These are rare exceptions, applicable only in unusual circumstances." (Citations omitted; internal quotation marks omitted.) *DXR Finance Parent, LLC* v. *Theraplant, LLC*, supra, 223 Conn. App. 374–35.

or other similar motion, no automatic stay shall arise upon the court's denial of any subsequent contested motion by that party, unless the party certifies under oath, in an affidavit accompanying the motion, that the motion was filed for good cause arising after the court's ruling on the party's most recent motion. . . .'' The application of § 61-11 (g) may result in the dismissal of an appeal because, ''[w]hen no automatic appellate stay is in effect, there is nothing to prevent the law days from passing, rendering a pending appeal from a judgment of strict foreclosure moot.'' *Connecticut National Mortgage Co.* v. *Knudsen*, supra, 323 Conn. 687; see *Citigroup Global Markets Realty Corp.* v. *Christiansen*, supra, 163 Conn. App. 640 (dismissing appeal on basis of conclusion that no automatic appellate stay was in effect to prevent law days from passing, pursuant to application of § 61-11 (g), which rendered appeal moot).

In the present case, the defendants argue that Wade's February 22, 2019, June 3, 2022, and November 4, 2022 motions did not qualify as ''at least two prior motions to open or other similar motion'' under Practice Book § 61-11 (g) and, therefore, an automatic appellate stay was in effect to prevent the law days from passing. Specifically, the defendants contend that (1) the prior motions would not have rendered the judgment ineffective, which is required under the plain meaning of § 61-11 (g), and (2) interpreting § 61-11 (g) to include the prior motions at issue would not serve the purpose of that rule, as set forth in our case law, because ''none of the . . . motions had the effect of creating an appellate stay, such as would nullify a law day set by the court in its judgment of strict foreclosure,'' and, thus, they ''did not create the repetitive appellate stays that § 61-11 (g) is designed to prevent.''[9] We disagree.

---

[9] The defendants also focus on Wade's self-represented status at the time that he filed the February 22, 2019, June 3, 2022, and November 4, 2022 motions, arguing that ''[t]he proposed interpretation of [Practice Book] § 61-11 (g) operates to create both surprise and injustice, particularly when applied to a [self-represented] litigant.'' Although ''[i]t is the established

"The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . In seeking to determine [the] meaning [of a statute or a rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]. . . . If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered. . . . When [the provision] is not plain and unambiguous, we also look for interpretive guidance to the . . . history and circumstances surrounding its enactment, to the . . . policy it was designed to implement, and to its relationship to existing [provisions] and common law principles governing the same general subject matter . . . . We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise. . . . Put differently, we follow the clear meaning of unambiguous rules, because [a]lthough we are directed to interpret liberally the rules of practice, that liberal construction applies only to situations in which a strict adherence to them [will] work surprise or injustice." (Citations omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594–95, 181 A.3d 550 (2018).

We first turn to the text of Practice Book § 61-11 (g), which provides in relevant part that, if a defendant in

policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party"; (internal quotation marks omitted) *Lowthert* v. *Freedom of Information Commission*, 220 Conn. App. 48, 57, 297 A.3d 218 (2023); we note that the defendants were represented by counsel in filing their December 28, 2022 motion to set aside that is the subject of this appeal, and it was at that time that they should have considered the applicability of § 61-11 (g) and whether to file an affidavit of good cause to accompany that motion. Moreover, "[a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) Id.

a strict foreclosure action has filed, and the court has denied, "at least two prior motions to open or other similar motion, no automatic stay shall arise upon the court's denial of any subsequent contested motion by that party," unless that motion is accompanied by an affidavit of good cause.[10]

Our appellate courts have not yet fully examined the exact parameters of what constitutes a "[motion] to open or other similar motion" for purposes of Practice Book § 61-11 (g). This court has indicated, however, that a motion to reargue or reconsider a denial of a motion to open would qualify as one of the prior motions included under that provision. See *Lending Home Funding Corp.* v. *REI Holdings, LLC*, 214 Conn. App. 703, 719 n.18, 281 A.3d 1 (2022) ("the first motion to reargue/reconsider the court's denial of the first motion to open was only the second 'motion to open or other similar motion' filed subsequent to the judgment of strict foreclosure" pursuant to Practice Book § 61-11 (g)). In addition, Practice Book § 63-1 (c) (1), which governs the creation of new appeal periods, provides guidance as to what types of motions, like a motion to open, would render a judgment ineffective:

---

[10] Although the defendants focus on the language in the title of Practice Book § 61-11 (g), directed at "motion[s] rendering ineffective a judgment of strict foreclosure," our review of the plain meaning of that rule is not so limited. "Although the title of a statute provides some evidence of its meaning, the title is not determinative of its meaning. . . . Our Supreme Court has stated that boldface catchlines in the titles of statutes . . . are intended to be informal brief descriptions of the contents of the [statutory] sections. . . . These boldface descriptions should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections. . . . Moreover, the title of a statute cannot trump an interpretation that is based on an analysis of the statutory . . . language and purpose." (Citation omitted; internal quotation marks omitted.) *Coyle* v. *Commissioner of Revenue Services*, 142 Conn. App. 198, 203, 69 A.3d 310 (2013), appeal dismissed, 312 Conn. 282, 91 A.3d 902 (2014) (certification improvidently granted); see id., 205 (looking to substance of statutory language rather than language of title of statute for purpose of statutory interpretation).

"Motions that, if granted, would render a judgment, decision or acceptance of the verdict ineffective include, but are not limited to, motions that seek: the opening or setting aside of the judgment; a new trial; the setting aside of the verdict; judgment notwithstanding the verdict; reargument of the judgment or decision; collateral source reduction; additur; remittitur; or any alteration of the terms of the judgment. . . ." Practice Book § 63-1 (c) (1).

We conclude that Wade's February 22, 2019, June 3, 2022, and November 4, 2022 motions constitute "at least two prior motions to open or other similar motion" under the plain meaning of Practice Book § 61-11 (g). Wade himself explicitly designated his February 22, 2019 motion as a motion to open, seeking to open and vacate the judgment of strict foreclosure, which clearly falls within the ambit of § 61-11 (g). In addition, although Wade titled his June 3, 2022 motion as a "Motion for Judgment of Dismissal for Lack of Standing and Lack of Subject Matter Jurisdiction" and his November 4, 2022 motion as a "Motion for Void Judgment," our review of the substance of those motions and the relief sought therein leads us to conclude that they are the functional equivalents of motions to open.

"[O]ur case law has recognized that a motion is to be decided on the basis of the substance of the relief sought rather than on the form or the label affixed to the motion. . . . It is the substance of a motion, therefore, that governs its outcome, rather than how it is characterized in the title given to it by the movant." (Internal quotation marks omitted.) *Hebrand* v. *Hebrand*, 216 Conn. App. 210, 219, 284 A.3d 702 (2022); see also *Cocchia* v. *Testa*, 206 Conn. App. 634, 644, 261 A.3d 90 (2021) (evaluating "content and substance" of motion).

In the present case, the substance of the arguments contained within the June 3 and November 4, 2022

motions, like the February 22, 2019 motion to open, was that the trial court lacked subject matter jurisdiction over the present action because the original plaintiff was not the holder of the note and therefore lacked standing to commence the action. In addition, although characterized differently, Wade's prior motions sought essentially the same relief—to "vacate," "void," or "dismiss" the judgment. The content of the motions and the nature of the relief sought is consistent with motions to open filed in other cases. See, e.g., *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 669–70 (defendant filed motion to open seeking to vacate judgment of foreclosure by sale on basis of claim that court lacked subject matter jurisdiction because plaintiff was not holder of note and did not have standing to commence action); *Deutsche Bank National Trust Co.* v. *Pardo*, 170 Conn. App. 642, 645, 155 A.3d 764 (defendant filed motion to open judgment of strict foreclosure on same basis), cert. denied, 325 Conn. 912, 159 A.3d 231 (2017); see also *U.S. Bank Trust, N.A.* v. *Healey*, 224 Conn. App. 867, 868, 315 A.3d 1112 (2024) (defendants filed motion to open seeking to "dismiss" judgment); *Myrtle Mews Assn., Inc.* v. *Bordes*, 125 Conn. App. 12, 13, 6 A.3d 163 (2010) (defendant filed motion to open judgment of strict foreclosure claiming judgment was "void" because court lacked personal jurisdiction). Because the prior motions at issue are all, in effect, motions to open, they comprise "at least two prior motions to open or other similar motion" under the plain meaning of Practice Book § 61-11 (g).

Moreover, we are not persuaded by the defendants' argument that applying Practice Book § 61-11 (g) to the present case on the basis of the prior motions at issue would not serve the purpose of that rule. Our Supreme Court and this court have explained that § 61-11 (g) was enacted "to put a stop to the ' "perpetual motion

machine" "[11] and accompanying appellate litigation generated when a defendant files serial motions to open a judgment of strict foreclosure and, each time a motion to open is denied, files a new appeal from the judgment denying the motion to open." (Footnote in original.) *Connecticut National Mortgage Co.* v. *Knudsen*, supra, 323 Conn. 687; see also *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 762, 966 A.2d 239 (2009). If we accept the defendants' arguments, we would, in effect, be inviting them to submit an endless series of creatively labeled motions, all seeking the same goal—opening the judgment.

Considering the repetitive nature of the February 22, 2019, June 3, 2022, and November 4, 2022 motions, which continued to delay the finality of the judgment, we conclude that they are precisely the types of motions that Practice Book § 61-11 (g) intended to address. In reaching this conclusion, we emphasize that the present action was commenced nearly fifteen years ago and that the judgment of strict foreclosure was rendered nearly eight years ago. The February 22, 2019 and June 3, 2022 motions generated additional appellate litigation,[12] as discussed in *Connecticut National Mortgage*

___

[11] " 'Prior to [the effective date of Practice Book § 61-11 (g)], a defendant in a foreclosure action could employ consecutive motions to open the judgment in tandem with Practice Book §§ 61-11 and 61-4 "to create almost the perfect perpetual motion machine.' " *Citigroup Global Markets Realty Corp.* v. *Christiansen*, [supra, 163 Conn. App. 639]." *Connecticut National Mortgage Co.* v. *Knudsen*, supra, 323 Conn. 687 n.7.

[12] As explained previously in this opinion, Jacquelyn appealed following the denial of Wade's February 22, 2019 motion, and Wade appealed following the denial of his June 3, 2022 motion.

The defendants did not appeal from the denial of Wade's November 4, 2022 motion, and, thus, that motion did not result in an appellate stay or the resetting of the law days, as the defendants argue. Nevertheless, it was still the type of motion that could have generated the additional appellate litigation discussed in *Connecticut National Mortgage Co.* v. *Knudsen*, supra, 323 Conn. 687, given that it was, in effect, a motion to open, as discussed previously in this opinion.

*Co.* v. *Knudsen*, supra, 323 Conn. 687, and were followed by the setting of new law days.[13] Indeed, all three motions, which were effectively "serial motions to open a judgment of strict foreclosure," created a "perpetual motion machine" employed by the defendants, which § 61-11 (g) was designed to prevent. (Internal quotation marks omitted.) Id. Accordingly, applying § 61-11 (g) to the present case on the basis of the prior motions at issue serves the purpose of that rule.

Because we conclude that Wade filed, and the trial court denied, "at least two prior motions to open or other similar motion" pursuant to Practice Book § 61-11 (g), we further conclude that no automatic appellate stay arose upon the court's denial of the defendants' December 28, 2022 motion to set aside the judgment and the filing of the appeal therefrom. As noted, the defendants' December 28, 2022 motion to set aside the judgment did not have an accompanying affidavit, and, therefore, the motion did not meet the requirement contained in § 61-11 (g) to set forth a good cause that arose after the court's ruling on Wade's most recent motion. See *Citigroup Global Markets Realty Corp.* v. *Christiansen*, supra, 163 Conn. App. 640. Thus, the law days have passed, and title has vested absolutely in the substitute plaintiff. See id., 642. Accordingly, we cannot grant the defendants any practical relief and must dismiss the appeal as moot.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[13] The defendants focus on the fact that the appeal following the denial of the June 3, 2022 motion did not result in an appellate stay that automatically suspended or nullified any law days. That is not, however, attributable to the nature or the character of the June 3, 2022 motion. Instead, the trial court delayed resetting the law days that were nullified by the appeal from the February 22, 2019 motion until after the resolution of the June 3, 2022 motion and its accompanying appeal, and, thus, there were no law days scheduled at the time of the appeal from the June 3, 2022 motion.